Emily L. Robinson Esq.
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
emily@lawofficeemilyrobinson.com
(323) 524-7611
(323) 524-4001

Counsel for Petitioner

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS SANCHEZ HERNANDEZ

Petitioner,
vs.

Kristi NOEM or ACTING DIRECTOR, Secretary, U.S. Department of Homeland Security; Pamela BONDI, U.S. Attorney General; Todd LYONS, Acting Director, Immigration and Customs Enforcement; Jaime Rios, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; F. Semaia, Warden, Adelanto Detention Facility, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondents

Case No.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

Jose Luis Sanchez Hernandez ("Petitioner") has lived in the United States for over twenty-five years, building a life and family here that depends on him. On October 15, 2025, he reported to a scheduled check-in appointment with Immigration and Customs Enforcement/Enforcement and Removal Operations ("ICE/ERO") and was taken into custody without prior warning, his Order of Release on Recognizance ("OREC") revoked without notice, explanation, or any showing of changed circumstances.

The need for immediate relief is acute and the timeline to seek a TRO does not reflect urgency. Every day he remains detained at the Adelanto ICE Processing Center is a day he cannot meaningfully prepare for his merits hearing, cannot care for his disabled eight-year-old son, and cannot support the family that relies on him. As Petitioner details herein, the duration of his detention is not a reason to deny this TRO.

This Motion for Temporary Restraining Order is filed concurrently with his petition for a writ of habeas corpus challenging that unlawful revocation. The request is to restore Petitioner to the status quo: release from custody on his own recognizance and without GPS monitoring.

## II. NOTICE TO RESPONDENTS

Undersigned counsel Emily L. Robinson emailed counsel for Respondents, Daniel Beck, informing him of the intended filing of this motion. At the time of filing, counsel for Respondents had not yet responded. Respondents will be served with a copy of this petition as soon as it is filed for additional notice.

## III. FACTUAL BACKGROUND

Petitioner Jose Luis Sanchez Hernandez is a native and citizen of Mexico who has resided in the United States since approximately 1999 (over twenty-five years). Robinson Decl. ¶ 6. Over that time, he has built deep and enduring ties to this country and to his family.

Petitioner is married to Melitza Arias, a United States citizen, whom he has been with since approximately 2015 and married in 2023. Robinson Decl. ¶ 7. He resides with and helps care for several United States citizen children, including Angel Perez (born July 8, 2009), Crystal Perez (born July 22, 2011), Benjamin Perez (born September 5, 2011), and Franky Sanchez (born November 5, 2016). Robinson Decl. ¶ 8. Several of these children have significant educational needs and receive services through individualized education programs requiring specialized transport and support appointments. Robinson Decl. ¶ 9. The youngest child, Franky Sanchez, suffered a traumatic brain injury and experienced a stroke and seizures at approximately two years of age; he continues to require ongoing medical monitoring and educational support. Robinson Decl. ¶ 10. Prior to his detention, Petitioner was employed and supporting this household. Robinson Decl. ¶ 11.

Petitioner was placed into removal proceedings in November 2023 and was released on his own recognizance that same day. Robinson Decl. ¶ 12; Ex. A, Form I-862 (Notice to Appear). His terms of supervision did not include GPS monitoring or an ankle monitor. Robinson Decl. ¶ 13. From November 2023 until his re-detention in October 2025, Petitioner complied with all immigration requirements: he attended all immigration court hearings as ordered, obtained lawful work authorization, submitted biometrics, and met all reporting and supervision obligations. Robinson Decl. ¶ 14. He has been represented by Attorney Erika Roman for years. He filed applications for relief based on the clear and documented hardship his detention causes to his

United States citizen family members. Robinson Decl. ¶ 15. Petitioner currently has a pending application for cancellation of removal pursuant to INA § 240A(b); biometrics have already been completed; and a detained merits hearing is scheduled before the immigration court on April 7, 2026. Robinson Decl. ¶ 16.

On October 15, 2025, Petitioner reported to his scheduled ICE/ERO check-in appointment. Robinson Decl. ¶ 18. He was taken into custody without warning at that appointment. Robinson Decl. ¶ 18. Critically, the government's own Form I-213, which references a prior arrest as the stated basis for apprehension, was created the same day as the re-detention, and the arrest it references was already known to immigration authorities before the check-in appointment. Robinson Decl. ¶ 19; Ex. B, Form I-213. That arrest did not result in a conviction and does not constitute a predicate offense for mandatory criminal detention under 8 U.S.C. § 1226(c). Robinson Decl. ¶ 19. Petitioner received no prior notice of ICE's intention to revoke his OREC and was provided no explanation for that revocation. Robinson Decl. ¶ 20. Petitioner has remained detained at the Adelanto ICE Processing Center since his apprehension. Robinson Decl. ¶ 21.

Petitioner sought a custody redetermination hearing. On December 4, 2025, Immigration Judge White held a bond hearing and denied release, expressly noting that under his interpretation of law the fact that Petitioner had lived in compliance for years while non-detained was irrelevant to eligibility, and that the applicable detention authority required mandatory detention under INA § 235(a)(1). Robinson Decl. ¶ 22; Ex. C, Bond Denial. Any further bond proceedings would be futile: the BIA decisions in *Matter of Q. Li* and *Matter of Yajure-Hurtado* have stripped Immigration Judges of any authority to grant bond to individuals in Petitioner's position, and the Immigration Judge has already demonstrated that even years of demonstrated compliance carry no weight under the current mandatory detention framework.

Petitioner is also experiencing medical neglect at Adelanto. He has suffered from severe bronchitis that went untreated while in custody. Robinson Decl. ¶ 24. The urgency of his situation is compounded by the documented and ongoing pattern of inadequate medical care at this facility.[1]

Accordingly, Petitioner has never received meaningful neutral review of ICE's decision to revoke his release and re-detain him. His procedural history demonstrates not that process was provided, but that immigration court review has been structurally incapable of correcting the unlawful deprivation of his liberty. This record confirms both the futility of bond proceedings and the necessity of habeas relief and direct judicial intervention.

## IV. TIMELINESS OF REQUEST FOR TRO AND EQUITABLE CONSIDERATIONS

Petitioner's request for emergency relief is timely and should be considered urgent to meet the standard for a TRO. Although Petitioner has now suffered in detention since October 2025, the ongoing nature of his unlawful detention constitutes a continuing constitutional violation. Each day that Petitioner remains in custody without lawful pre-deprivation process inflicts new and compounding harm. The passage of time does not cure an unconstitutional deprivation of liberty; it exacerbates it.

Moreover, any delay in seeking federal court intervention is directly attributable to Petitioner's limited financial means and the practical difficulties of securing capable counsel while detained and navigating a rapidly shifting immigration detention framework. Especially considering that his wife is now caring for four children each with unique medical and academic

[1] Family of detainee who died under ICE custody says he was denied medical care
, March 6, 2026, The Guardian; https://www.theguardian.com/us-news/2026/mar/06/detainee-died-ice-custody-california?utm

challenges without any support from her spouse/Petitioner. Petitioner pursued a bond hearing in good faith. Petitioner should not be penalized for the very barriers that underscore the equities of his case. Courts routinely recognize that delay does not defeat emergency relief where a petitioner faces ongoing unlawful detention and where barriers to timely filing are inherent in detention itself. The equities weigh strongly in favor of immediate judicial intervention, notwithstanding the duration of Petitioner's confinement.

This landscape has been anything but stable. In November 2025, the U.S. District Court for the Central District of California issued a nationwide class declaratory judgment in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), finding that noncitizens detained as "applicants for admission" under INA § 1225(b)(2)(A) were entitled to bond hearings under § 1226(a). In February 2026, the same court vacated *Matter of Yajure Hurtado* entirely. Last week, the Ninth Circuit issued an administrative stay pausing the vacatur and limiting the declaratory judgment's application outside this District while the December declaratory judgment remains in force in the Central District of California. Throughout this period, the Chief Immigration Judge instructed immigration judges nationwide to ignore the district court's orders and continue applying *Yajure Hurtado*. These rapid, conflicting developments unfolded over roughly four months. Even experienced immigration practitioners have struggled to track the shifting legal terrain. A working-class detainee with limited financial means, language barriers, and no institutional support cannot reasonably be expected to have navigated this instability faster than he did. The legal landscape that governs Petitioner's detention eligibility has changed materially and repeatedly since his re-detention in October 2025. That volatility is itself evidence of the complexity and confusion that understandably delayed federal court intervention.

## V. ARGUMENT

A temporary restraining order is governed by a four-factor test. Courts must consider whether Petitioner has shown: (1) a likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of such relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); s*ee also Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014). If Petitioner can demonstrate serious questions going to the merits of his claim, a lesser showing than a likelihood of success on the merits, and the balance of hardship tips sharply in his favor, an injunction may be issued, assuming the other two Winter factors have been met. *Friends of the Wild Swan*, 767 F.3d at 942.

A temporary restraining order preserves the *status quo ante litem*, which refers to the "last uncontested status which preceded the pending controversy." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024); *Shilling v. United States*, 2025 WL 926866, *11 (W.D. Wash. Mar. 27, 2025) (unpub) (granting preliminary injunction).

Here, that status quo is Petitioner's release on OREC without GPS monitoring, a condition the government itself established when it determined he was not a flight risk or danger to the community.

**A. Petitioner Has Shown He is Likely to Succeed on the Merits of his Claim.**

Petitioner's ongoing detention violates his Fifth Amendment substantive due process right because he is neither a flight risk nor a danger to the community. In addition, his ongoing detention violates his procedural due process rights because his OREC was revoked without any notice or any opportunity to contest his detention before a neutral arbiter.

The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). These due process rights are both substantive and procedural. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Substantive due process thus requires that all forms of civil detention (including immigration detention) bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510, 519–520, 527–528, 531 (2003).

Petitioner is not a flight risk or a danger to the community. He has resided in this country for over twenty-five years. He has a U.S. Citizen wife, a disabled U.S. Citizen minor child and three U.S. Citizen step-children he provides for. From November 2023 until his re-detention, he complied with every obligation under his OREC: attending all immigration court hearings, meeting all supervision requirements, maintaining lawful employment, and submitting biometrics. He has no criminal convictions, and any prior arrest history does not constitute a basis for mandatory detention under 8 U.S.C. § 1226(c) nor evidence of danger to the community. He has a pending application for cancellation of removal with a merits hearing scheduled, relief that

would directly benefit his U.S. citizen spouse and children, including a child with a traumatic brain injury who depends on Petitioner for care and transport. He has every incentive to continue engaging the legal process. Petitioner's re-detention serves no non-punitive purpose. It is part of a larger pattern targeting immigrants who have lawfully availed themselves of our legal processes.

The procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Non-citizens who are released from immigration custody have a recognized liberty interest in continuing to be free from government detention. *See Ortega v. Bonnar*, 415 F. Supp.3d 963, 970 (N.D. Ca. 2019). Once a non-citizen has a protected liberty interest, the *Mathews* test applies to determine what procedural protections are due before immigration officials can re-detain the non-citizen. Under that test, this Court must weigh: (1) the private interested affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three *Mathews* factors favor Petitioner. In this case, the private interest at stake is weighty. It is Petitioner's physical liberty. Petitioner has been detained for over five months without any lawful mechanism to seek release. The risk of erroneous deprivation is high: ICE already determined Petitioner posed no flight risk or danger when it released him in November 2023, he complied for nearly two years, and ICE revoked his release without prior notice or reasoned explanation. Immigration Judge White then declared years of demonstrated compliance legally irrelevant, foreclosing any individualized inquiry.

The government's interest in bypassing pre-deprivation process is minimal. Petitioner had no notice of Respondents' intention to re-detain him and no opportunity to contest that action. *See e.g.*, *Fernandez Lopez*, 2025 WL 2959319 at *6; *J.S.H.M.*, 2025 WL 2938808 at *18; *Noori*, 2025 WL 2800149 at *11 ("Respondents did not provide Petitioner individualized notice and reasoning prior to his arrest and detention on June 12, 2025 and have presented no legitimate reason for why those decisions were made. Any governmental interest of efficient administration of immigration laws . . . does not outweigh these first two factors."). Bond hearings are routine and impose negligible cost. *See Doe v. Becerra*, 2025 WL 691664, *6 (E.D. Cal. Mar. 3, 2025); *Noori v. Larose*, 2025 WL 2800149, *11 (S.D. Cal. Oct. 1, 2025). Petitioner is represented by counsel before the immigration court.

Due process requires the government to bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger before re-detaining him. *See Fernandez Lopez*, 2025 WL 2959319 at *8; *J.S.H.M. v. Wofford*, 2025 WL 2938808, *16 (E.D. Cal. Oct. 16, 2025) (unpub); *Abduraimov*, 2025 WL 2912307 at *9; *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, *17 (W.D.N.Y. July 16, 2025); *Ramirez Tesara v. Wamsley*, 2025 WL 2637663, *3 (W.D. Wash. Sept. 12, 2025); *Munoz Materano v. Arteta*, 2025 WL 2630826, *13 (S.D.N.Y. Sept. 12, 2025).

Thus, all three *Mathews* favor Petitioner, and he has established a likelihood of success on his due process claims.

**Petitioner's Rearrest Also Violated the Fourth Amendment Prohibition on Unreasonable Seizure.**

Petitioner is also likely to succeed on his claim that his re-detention violates the Fourth Amendment's prohibition on unreasonable seizure. The Fourth Amendment prohibits government

officials from repeatedly arresting individuals on the same probable cause. *See Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) ("[T]he primary purpose of an arrest is to ensure the arrestee appears to answer charges…. Once the arrestee appears before the court, the purpose of the initial seizure has been accomplished. Further seizure requires a court order or new cause; the original probable cause determination is no justification."). In the immigration context, a noncitizen previously released from custody cannot be rearrested "solely on the ground that he is subject to removal proceedings" and without some new, intervening cause. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017), *aff'd sub nom., Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Courts have long recognized that permitting such rearrests could result in "harassment by continual rearrests." *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971).

Here, although DHS's Form I-213 references a prior arrest as the stated basis for Petitioner's re-detention, that arrest was already known to immigration authorities before Petitioner reported to his October 15, 2025 check-in appointment. Robinson Decl. ¶ 20; Ex. B. That pre-existing knowledge forecloses any claim that the arrest constitutes a new, intervening cause justifying re-arrest. That DHS knew of this arrest and nonetheless continued to schedule and conduct Petitioner's check-in reflects a continued determination that his OREC conditions remained appropriate. The I-213 and all supporting documentation were generated on the same day as the re-detention—a timeline that suggests post-hoc rationalization rather than a genuine change in circumstances. Moreover, the arrest did not result in a conviction and does not constitute a predicate offense for mandatory detention under 8 U.S.C. § 1226(c). Because Respondents cannot demonstrate a material change in circumstances arising after Petitioner's release, his re-arrest was based solely on the same immigration status underlying his original 2023 detention and therefore constitutes an unreasonable seizure in violation of the Fourth Amendment.

**B. Immigration Court Review Is Structurally Inadequate; Bond Proceedings Are Futile and Remedially Mismatched.**

Immigration court is not an adequate or neutral forum for adjudicating the lawfulness of DHS's revocation of Petitioner's release on recognizance. Immigration Judges are housed within the Department of Justice, while DHS. This is the very agency that revoked Petitioner's liberty and controls detention authority. See 8 C.F.R. § 1003.0(a). Where the executive branch both revokes liberty and controls the adjudicatory forum that purportedly reviews that revocation, the resulting process is constitutionally suspect. *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972).

DHS has classified Petitioner as an "applicant for admission" and asserts detention authority under 8 U.S.C. § 1225(b)(2)(A). In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the BIA held that any noncitizen paroled under 8 U.S.C. § 1182(d)(5) whose parole has since expired or been terminated is categorically ineligible for a bond hearing before an IJ. *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), extended that bar to individuals who entered without inspection. Immigration Judge White expressly applied this framework to deny Petitioner bond, declaring that his years of compliance while non-detained were legally irrelevant.

This has become a pervasive national crisis. Reuters reported that the Chief Immigration Judge instructed Immigration Judges nationwide to deny bond hearings notwithstanding multiple federal court rulings requiring such hearings, reflecting top-down pressure to apply predetermined detention outcomes and to disregard Article III judicial determinations.[2]

[2] Top U.S. immigration judge says bond hearings should be denied despite court rulings, documents show, Reuters, Jan. 16, 2026
https://www.reuters.com/legal/government/top-us-immigration-judge-says-bond-hearings-should-be-denied-despite-

This history also shows why bond is not the proper remedy. The constitutional injury here is not simply ongoing detention; it is the revocation of physical liberty without notice, without a reasoned revocation decision, and without any showing of changed circumstances after the government already determined release on recognizance was appropriate. Nor can a bond hearing restore the status quo ante, which is release on recognizance, because it reframes the inquiry as a discretionary custody reassessment rather than a review of whether liberty was unlawfully revoked in the first instance.

Further, in practice, Immigration Judges have misapplied *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), which requires an individualized balancing of factors bearing on flight risk and danger, as a formalistic checklist used to rationalize detention rather than to meaningfully assess release. Favorable factors — extended compliance while non-detained, lawful employment, lack of criminal history, significant family ties including a U.S. citizen spouse and children with documented medical and educational needs — are discounted or ignored, while speculative or pretextual concerns are elevated to justify continued detention. Because *Guerra* supplies one of the primary articulated doctrinal constraints on Immigration Judges' otherwise broad custody discretion under INA § 236(a), its distortion transforms an individualized balancing framework into a one-directional ratchet toward incarceration. This inversion of *Guerra* removes any meaningful limiting principle on detention decisions and underscores why

court-2026-01-16/; *See also:* **US judge 'worried' about immigration courts not complying with rulings requiring bond hearings**
Reuters, Jan. 20, 2026
https://www.reuters.com/legal/government/us-judge-worried-about-immigration-courts-not-complying-with-rulings-requiring-2026-01-20/

immigration court cannot reliably function as a neutral or independent check on DHS's deprivation of liberty in this posture.

Recent authority in this district confirms that post-deprivation immigration court procedures are constitutionally inadequate to cure unlawful re-detention following release on recognizance. In *David G.M. v. Chestnut*, No. 1:26-cv-00369-TLN-CSK, Order Granting TRO (E.D. Cal. Jan. 17, 2026), the Court granted a TRO and ordered immediate release where ICE re-detained an asylum seeker previously released on his own recognizance under § 1226(a). The Court held the petitioner had a protected liberty interest in continued freedom, that pre-deprivation notice and hearing were constitutionally required, and that post-deprivation remedies were inadequate. As in *David G.M.*, Petitioner here was released on his own recognizance, complied with all conditions, and was re-detained without notice or changed circumstances. Where liberty has already been revoked without due process, immigration court cannot supply the neutral, independent review required by the Fifth Amendment.

Accordingly, immigration court review cannot supply the neutral, independent check due process requires, and bond proceedings cannot remedy the injury. Direct release restoring the status quo ante is the only relief that meaningfully vindicates Petitioner's constitutional rights.

**Administrative Exhaustion Should Be Excused:**

To the extent Respondents argue that Petitioner was required to appeal the IJ's bond denial to the BIA before seeking federal court intervention, prudential exhaustion should be excused. Courts recognize that exhaustion may be waived where administrative remedies are inadequate, where pursuit of those remedies would cause irreparable injury, or where the structural

inadequacy of the forum makes resort to it futile. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017). All three grounds apply here. *Matter of Q. Li* and *Matter of Yajure-Hurtado* are binding BIA precedent that strip IJs of authority to grant bond to individuals in Petitioner's position — asking the BIA to reconsider its own rules in a non-precedential appeal is a plainly futile exercise. Meanwhile, each additional month of BIA processing is a month of unconstitutional detention, compounding irreparable harm to Petitioner and his family. And as detailed in Section B, EOIR's structural relationship to the executive branch and its demonstrated pattern of defying federal court orders make it an inadequate forum to supply the neutral review due process requires. Petitioner's failure to appeal to the BIA will not preclude him from obtaining relief here.

**C. Petitioner will Suffer Irreparable Harm Absent Issuance of a Temporary Restraining Order.**

In the absence of a TRO, Petitioner is at risk of continued unlawful detention. Deprivation of Petitioner’s due process rights constitutes irreparable injury. *Sun v. Santacruz*, No. ___, 2025 WL 2730235, at *7 (C.D. Cal. Aug. 26, 2025) (unpub) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

Petitioner’s detention is causing concrete, severe, and irreversible harm independent of the constitutional violation. He has been detained for over five months despite nearly two years of full compliance while non-detained. He is the primary caregiver and financial provider for his U.S. citizen spouse and four U.S. citizen children. The youngest child, Franky Sanchez, suffered a traumatic brain injury and continues to require ongoing medical monitoring and educational support; several other children in the household have individualized education programs

requiring specialized transport and support appointments. Petitioner's detention has deprived this vulnerable family of his care, support, and presence during an acutely difficult period.

The harm to Petitioner's legal case is also irreparable. A detained merits hearing for his cancellation of removal application is scheduled for April 7, 2026. Preparation of a cancellation case requires extensive documentation of hardship to qualifying family members, including medical records, educational records, IEP documentation, family declarations, and other evidence. This preparation is materially and substantially impaired by detention because communication with family and counsel is restricted and Petitioner's ability to assist in gathering records and preparing testimony is severely limited. The deprivation of a meaningful opportunity to prepare for his own merits hearing cannot be remedied after the fact. Petitioner is also suffering medical neglect at Adelanto. He has experienced severe bronchitis that went untreated while in custody. There are additional "irreparable harms imposed on anyone subject to immigration detention[,]" *Hernandez*, 872 F.3d at 995, including inadequate access to medical care and legal resources in ICE detention facilities.[3]

Prolonged detention under these circumstances independently constitutes irreparable harm.  Petitioner has done nothing to justify this prolonged incarceration. His continued detention is not only unlawful but is inflicting ongoing and compounding harm that this Court can and should immediately remedy through issuance of a temporary restraining order.

**D. The Balance of Equities Tip in Petitioner's Favor and the Public Interest Favors**

[3] *See also* "A former DACA recipient died in ICE custody [at Adelanto Detention Center]. Did officials ignore his pleas for help?" *Los Angeles Times*, Sept. 23, 2025; "Moldy food, dirty towels: Critics warn of inhumane conditions at [Adelanto Detention Center]," *Los Angeles Times*, June 20, 2025. Most recently, Alberto Gutiérrez Reyes died at Adelanto in March 2026 after having been granted bond and while awaiting ERO processing for release—demonstrating that the constitutional injury of detention without adequate process is not theoretical, and that delay in release carries life-or-death consequences.

**Issuance of a Temporary Restraining Order.**

The balance of equities and public interest merge in cases against the government. *See Nken v. Holder,* 556 U.S. 418, 436 (2009). Here, the balance favors Petitioner.

The likelihood of Petitioner's success on the merits, combined with the established constitutional framework that requires the government to proceed lawfully when detaining non-citizens, strongly tips the balance of equities in Petitioner's favor. "There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *See League of Women Voters of United States v. Newby,* 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotation marks and citations omitted).

Petitioner's constitutional right to be free of unlawful detention weighs heavily in the public interest. As the revocation of Petitioner's OREC without notice or the opportunity to contest the revocation, coupled with his continued detention without any hearing before a neutral arbiter, violate his due process rights, there can be no public interest in prolonging that circumstance. *See e.g.*, *Washington v. DeVos*, 481 F.Supp.3d 1184, 1197 (W.D. Wash. 2020).

Petitioner pursued available administrative avenues in good faith, seeking bond through immigration court. That effort was denied on categorical mandatory detention grounds with Immigration Judge White expressly declaring that years of demonstrated compliance were legally irrelevant under INA § 235(a)(1). Further proceedings under *Matter of Q. Li* and *Matter of Yajure-Hurtado* would be futile for the same reason. Equity does not penalize Petitioner for the time it took to secure capable counsel for complex constitutional litigation while detained, particularly given the rapidly shifting legal landscape detailed above.

The hardship to Petitioner is concrete, severe, and compounding daily. The imposition on the government is minimal at most, a bond hearing at which Respondents may demonstrate, by clear and convincing evidence, that Petitioner presents a flight risk or danger. The years of compliance, the pending cancellation case, the U.S. citizen spouse, and the dependent children including one with serious medical needs all strongly weigh against any such finding. The balance of equities tips sharply in favor of issuance of a TRO.

## VI. THE COURT SHOULD NOT REQUIRE PETITIONER TO PROVIDE SECURITY

The Court should not require a bond under Fed. R. Civ. P. Rule 65(c). This rule permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c). But it is well established that Rule 65(c) does not impose a mandatory requirement for a bond, but rather "invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Courturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Here, there is no realistic likelihood of harm to Respondents if the Court grants the requested TRO, and it would pose a significant hardship on Petitioner who is incarcerated to have a bond imposed. The Court should exercise its discretion and waive the requirement to post a bond under Rule 65(c).

## VII. CONCLUSION

For the foregoing reasons, Petitioner Jose Luis Sanchez Hernandez respectfully submits that he has met the criteria for a temporary restraining order. He asks the Court to order: (1) his

immediate release pursuant to the *status quo ante*—release on his own recognizance without GPS monitoring and to enjoin Respondents from re-detaining him absent further order of this Court; (2) in the alternative, his immediate release and an order enjoining Respondents from re-detaining him unless they first demonstrate at a constitutionally adequate pre-deprivation hearing before a neutral adjudicator at which Respondents must prove by clear and convincing evidence that he is a flight risk or a danger to the community; (3) return of Petitioner's valid work authorization and any other identity documents; and (4) an order prohibiting Respondents from transferring Petitioner outside of this District pending final resolution of this litigation.

**RESPECTFULLY SUBMITTED this 9th day of March, 2026**

**/s/ Emily L. Robinson**
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
(O) (323) 524-7611
Emily@lawofficeemilyrobinson.com